[Civ. No. 18250. First Dist., Div. Two. July 29, 1959.]

LEO J. MEYBERG COMPANY, INC. (a Corporation), Appellant, v. BOARD OF TRADE OF SAN FRANCISCO (a Voluntary Association), Respondent.

H. W. Glensor for Appellant.

Wallace, Garrison, Norton & Ray and James M. Conners for Respondent.

O'DONNELL, J. pro tem.*—This is an appeal by plaintiff from a judgment rendered in favor of defendant and respondent Board of Trade of San Francisco after respondent's general demurrer to plaintiff's second amended complaint was sustained without leave to amend.

The second amended complaint (hereinafter referred to as the complaint) alleges: That the respondent Board of Trade of San Francisco (hereinafter sometimes referred to as the board) is a voluntary association composed of some 376 mercantile dealers; that plaintiff is a member of the board; that the board is supported by monthly dues paid by its members; that the board is maintained ''for the purpose of furnishing and which does furnish its members information and service

*Assigned by Chairman of Judicial Council.

when dealing with affairs of embarrassed or insolvent debtors and also serves said members in the collection of debts other than in the ordinary course of business. In the case of insolvent or financially embarrassed debtors, it operates, in practice, by forming Creditors Committees, taking assignments to trustees selected by said [board] and which trustees usually are officers of or connected with said [board], furnishing said committees with advice and guidance, with legal service in preparation of necessary legal papers, and conducting all details connected with said assignments and administration of the affairs of said insolvent or financially embarrassed debtors by its Secretary and Secretarial Staff under the management of said Creditors Committee''; that Burton & Rose, a partnership, was engaged in the mercantile business; that on or about February 28, 1955 Burton & Rose became unable to pay its debts as they matured; that on March 4, 1955 the board called a meeting of the creditors of Burton & Rose. Paragraph VIII of the complaint reads as follows: ''That at said meeting, and under the supervision and control of said [board] and its officers, a committee was selected from the Creditors of said BURTON & ROSE to investigate and thereafter to conduct the affairs of said BURTON & ROSE, the control of its bank account and finances was taken over by said committee, and one member of said committee was appointed and designated to countersign any checks that in the future would be issued by said BURTON & ROSE.'' On March 7, 1955 the board issued and mailed to the creditors of Burton & Rose its Bulletin Number 1 which contained a report of the business transacted at the March 4th meeting and a request that the creditors refrain from pressing their claims. April 12, 1955 Bulletin Number 2 was issued, reading: ''Weekly statements of receipts and disbursements have been furnished this office, copies of which have been transmitted to the members of the committee and all checks drawn by the debtor company have been and are being countersigned by a member of the committee.'' Bulletin Number 3, issued May 17, 1955, reads: ''As you have already been advised all checks issued are being countersigned by a member of the committee,'' and ''The committee will continue to meet as often as necessary to maintain adequate scrutiny of the business.'' Bulletin Number 5, issued August 24, 1955, reads: ''The members of the committee have been keeping in close touch with the operation of the business through

weekly statements of receipts and disbursements and monthly balance sheets and operating statements prepared by a C.P.A.''; that for some time prior to the formation of the creditors' committee plaintiff had been doing business with Burton & Rose on a cash basis only, and did not accept checks in payment of goods sold. Paragraph XII of the complaint states: ''That after the appointment of said committee and appointment of a member thereof to countersign checks, and at the solicitation of Burton & Rose and upon oral assurances in addition to said bulletins from the said [board] and its officers that said committee was carefully scrutinizing the operations of said Burton & Rose and a representative of said committee was countersigning checks of said Burton & Rose, plaintiff agreed to sell and did sell merchandise at various times to said Burton & Rose, not on credit but by taking in payment for said merchandise the checks of said Burton & Rose, all of which checks were honored and paid for a period of approximately 20 months and until the cessation of the operation of said committee as hereafter alleged.'' Paragraph XIII reads: ''That between November 1st and 8th, 1956 plaintiff, relying upon the representations that a member of the creditors' committee was countersigning checks and that the committee was keeping a careful scrutiny on the business operations of said Burton & Rose, accepted checks in payment for merchandise, of and from said Burton & Rose, aggregating $3,613.13 and in due course, presented said checks to the bank upon which they were drawn for payment. Said checks were not paid and plaintiff upon investigation learned for the first time that, without any previous bulletin or notice from defendants or any of them to plaintiff, or from the creditors' committee or any member thereof, the creditors' committee which had been formed had ceased to carry out the purposes for which it had been formed, and that the person assigned by said committee to countersign said checks was not doing so and had not been doing so for sometime [sic] past and that said committee was not keeping a close, or any, scrutiny on the business of Burton & Rose.'' The complaint proceeds to allege that on or about December 1, 1956, Burton and Rose assigned all its assets to defendant Hempy in trust for the benefit of its creditors. The prayer of the complaint seeks various types of relief, among them being damages in a sum equal to the amount of the dishonored checks of Burton and Rose.

On this appeal plaintiff contends that the complaint states

a good cause of action on either one or the other of the following two theories: (1) that respondent had a contractual duty to keep appellant informed of the financial condition of Burton and Rose which it breached; and (2) promissory estoppel.

Appellant's first theory is not supported by the allegations of its complaint. It is nowhere alleged that respondent had promised, or undertaken any obligation to keep its members at all times informed of the financial condition of debtors of its members. The only allegation that touches that subject is that which states that respondent "is maintained by said members for the purpose of furnishing and which does furnish its members information and service when dealing with affairs of embarrassed or insolvent debtors . . ." It was, of course, incumbent upon appellant to set forth in its complaint sufficient allegations to show the existence of a duty owed by respondent to it, and a breach of that duty by respondent. To say that respondent is maintained for the purpose of furnishing information is not the equivalent of saying that it has promised or agreed to furnish information. "A contract is an agreement to do or not to do a certain thing." (Civ. Code, § 1549.) It is nowhere alleged that respondent has promised or agreed to furnish information to its members.

Nowhere is it alleged that respondent board of trade asked appellant to accept checks of Burton and Rose, or had any knowledge that appellant was accepting such checks. On the contrary, a fair reading of the several bulletins pleaded shows that the concern of the board was with debts existing at the time of the first creditors' meeting. Nowhere is it alleged that the board in any way solicited or suggested the extension of further credit, however limited. Thus even if the allegations of the complaint could be construed to show an agreement, express or implied, to notify creditors of termination of supervision of the debtor's affairs, such promise would run only to creditors whose claims existed at the outset of the financial difficulties of Burton and Rose. Appellant's action is not based upon such a debt.

The above comment applies equally to appellant's theory of promissory estoppel. The most commonly accepted definition of promissory estoppel is that contained in Restatement of Contracts, section 90, which reads: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial char-

acter on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.''

 There is nothing in the pleaded representations to indicate that respondent ''should reasonably expect'' that appellant would extend additional credit in reliance thereon. The statements, as pointed out, were made solely to persuade existing creditors to refrain from pressing their claims.

As we pointed out above, the complaint with which we are here concerned is appellant's second amended complaint. It is presumed that a plaintiff has stated his case as favorably to himself as he can. Where a plaintiff has made several attempts to state a cause of action but has failed to do so the court will assume that no further facts exist which could form the basis for stating a cause of action—else plaintiff would have alleged them. (*Taliaferro* v. *Salyer,* 162 Cal.App.2d 685, 692 [328 P.2d 799] ; *Spencer* v. *State Farm Mut. Auto Ins. Co.,* 152 Cal.App.2d 797 [313 P.2d 900].)

 Appellant does not assert the existence of other facts which might aid its pleading. It does not appear, therefore, that the lower court abused its discretion in denying appellant further leave to amend its complaint.

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.